**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COLGATE-PALMOLIVE COMPANY | CIVIL ACTION NO. 3:07-CV-1709 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| TANDEM INDUSTRIES, GYP'S MARKET, JAMES LAWSON, THOMAS MULHEARN, and RICHARD FLOWER, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are Defendants Tandem Industries, Gyp's Market, James Lawson, and Thomas Mulhearn's Motion for Summary Judgment (Doc. 45) and Plaintiff Colgate-Palmolive's Motion for Summary Judgment (Doc. 50).  For the reasons discussed in detail below, Defendants Tandem Industries, Gyp's Market, James Lawson, and Thomas Mulhearn's motion will be denied, and Plaintiff Colgate-Palmolive's motion will be denied in part and granted in part.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## BACKGROUND

Plaintiff Colgate-Palmolive Company ("Colgate") is a Delaware Corporation with a principal place of business in New York, New York.  (Defs.' SOF, Doc. 46 ¶ 1; Pl.'s Reply to Defs.' SOF, Doc 79 ¶ 1.)  Colgate is a leading consumer products company, designing and manufacturing products in the areas of oral care, personal care, home care, and pet nutrition.  (Defs.' SOF ¶ 3; Pl.'s Reply to Defs.' SOF ¶ 3.)  Defendant Tandem Industries is a business operating in Freeland, Pennsylvania, registered to Defendants James Lawson

and Thomas Mulhearn.  (Defs.' SOF ¶ 2; Pl.'s Reply to Defs.' SOF ¶ 2.)  Tandem Industries operates a store in Freeland, Pennsylvania named Gyp's Market.  (*Id*.)

Defendant Richard Flower was employed by Colgate from 1976 to August 2006, last serving in the position of Account Business Manager ("ABM").  (Defs.' SOF ¶ 4; Pl.'s Reply to Defs.' SOF ¶ 4.)  As a Colgate employee, Defendant Flower received a copy and was aware of a Code of Conduct (the "Code") that directed employees to "avoid any activity or association which conflicts with or appears to conflict with [employees'] exercise of judgment in the Company's best interest."  (Pl.'s SOF, Doc. 66 ¶¶ 2-4.)  The Code further instructed Colgate employees to maintain accurate company records, and permitted Colgate employees to use company assets only for lawful, proper and authorized practices.  (*Id*. ¶¶ 5-6.)

Starting in 1996, Defendant Flower began supplying Defendants Tandem Industries, Gyp's Market, Thomas Mulhearn, and James Lawson (the "Tandem Defendants") with Colgate product.  (Pl.'s SOF ¶ 20; Defs.' Reply to Pl.'s SOF ¶ 20.)  Under the Defendants' arrangement, Flower shipped and personally delivered Colgate merchandise to the Tandem Defendants. (*Id.*)  In many instances, the product delivered to the Tandem Defendants had been returned to Colgate from other retailers.  (Pl.'s Reply to Defs.' SOF ¶ 39.) The Tandem Defendants examined and sorted this product, kept what they could sell and threw away what they could not.  (Pl.'s SOF ¶ 20; Defs.' Reply to Pl.'s SOF ¶ 20; Defs.' SOF ¶ 40; ; Pl.'s Reply to Defs.' SOF ¶ 40.)  This practice continued for ten (10) years, until 2006.  (Pl.'s SOF ¶ 23; Defs.' Reply to Pl.'s SOF ¶ 23.)

During this period, Defendant Flower made payments to Defendants Tandem Industries through the Total Account Management ("TAM") System and predecessor system.

(Defs.' SOF ¶¶ 4, 46; Pl.'s Reply to Defs.' SOF ¶¶ 4, 46; Pl.'s SOF ¶ 22; Defs.' Reply to Pl.'s SOF ¶ 22.)   These payments were made by Colgate-issued checks and totaled approximately six hundred seventy-four thousand, seventy dollars and fifty-five cents ($674,070.55) for the ten (10) year period from 1996 to 2006.  (Pl.'s SOF ¶ 23; Defs.' Reply to Pl.'s SOF ¶ 23.)  The Tandem Defendants had received free product and checks from other manufacturers, but Defendant Mulhearn testified that he could not remember any other deal with a company where the company provided free products for sale, while also providing regular check payments.  (Pl.'s SOF ¶ 26; Defs.' Reply to Pl.'s SOF ¶ 26.)  Defendant James Lawson also testified that he could not recall any deal with any suppler that was as good as the Tandem Defendants' deal with Colgate, and further testified that ninety-nine percent (99%) of the checks the Tandem Defendants received from manufacturers were from Colgate.  (*Id.*)  The Tandem Defendants had no expectation that they would receive any checks from Colgate when they purchased or received Colgate product from any source other than the free product Defendant Flower provided to them.  (Pl.'s SOF ¶ 27; Defs.' Reply to Pl.'s SOF ¶ 27.)

In addition to the free Colgate product Defendant Flower provided to the Tandem Defendants, he also sold them Colgate product at Colgate list prices (the same price Colgate would have sold it for).  (Pl.'s SOF ¶ 34; Defs.' Reply to Pl.'s SOF ¶ 34.)  Defendant Flower specifically asked the Tandem Defendants to pay him directly for these sales, rather than paying Colgate.  (*Id.*)  On occasion, Defendant Flower requested that his payment be made in cash and the Tandem Defendants honored these requests.  (Pl.'s SOF ¶ 35; Defs.' Reply to Pl.'s SOF ¶ 35.)  Defendant Lawson testified that it was not uncommon to personally pay brokers who sold the Tandem Defendants samples or "car stock".  (*Id.*)  In total, Defendant

3

Flower received approximately twenty-five thousand dollars ($25,000.00) from these sales. (Pl.'s SOF ¶ 36; Defs.' Reply to Pl.'s SOF ¶ 36.)

In August 2006, Defendant Flower retired from Colgate pursuant to a Voluntary Early Retirement Program and received severance pay and enhanced pension benefits.  In his severance agreement, he agreed and promised that he did not violate Colgate's Code of Conduct during his employment.  (Pl.'s SOF ¶¶ 36, 37; Defs.' Reply to Pl.'s SOF ¶¶ 36, 37.) After the Tandem Defendants were notified of Defendant Flower's retirement, they did not contact Colgate or Defendant Flower to see if they would continue receiving free products and payments from Colgate.  (Pl.'s SOF ¶ 41; Defs.' Reply to Pl.'s SOF ¶ 27.)  Following Defendant Flower's retirement, the Tandem Defendants have received no payments or free product from Colgate.  (Pl.'s SOF ¶ 42; Defs.' Reply to Pl.'s SOF ¶ 42.)

Following his retirement, Defendant Flower met with representatives from Colgate to discuss the payments made to the Tandem Defendants.  (Pl.'s SOF ¶ 43; Defs.' Reply to Pl.'s SOF ¶ 43.)  In a letter to the Tandem Defendants dated August 20, 2007, Colgate stated that it had no record of ever doing business with Defendants Gyp's Market or Tandem Industries and requested the Tandem Defendants' explanation for the payments they had received from Colgate. (Pl.'s SOF ¶ 44; Defs.' Reply to Pl.'s SOF ¶ 44.)  In a letter dated August 31, 2007 The Tandem Defendants' counsel responded that, when dealing with Defendant Flower, the Tandem Defendants had no reason to believe that they were dealing with anyone except Colgate through its authorized representative or agent, and that the details of the Tandem Defendants' dealings with Defendant Flower should be reflected in Colgate's business records.  (Pl.'s SOF ¶ 45; Defs.' Reply to Pl.'s SOF ¶ 45.)

On September 19, 2007, Colgate filed it's Complaint (Doc. 1), initiating this action and

4

bringing state law claims against Defendant Flower for fraud (Count I) and breach of fiduciary duty (Count II); against the Tandem Defendants for aiding and abetting Flower's breach of fiduciary duty (Count III), unjust enrichment (Count IV), and conversion (Count V); and against all Defendants for civil conspiracy (Count VI).   On October 8, 2007, the Tandem Defendants filed a Motion to Dismiss and a Motion to Sever (Doc 3), and on October 10, 2007 Defendant Flower submitted his Answer and Affirmative Defenses (Doc. 8).   On November 27, 2007, the Court entered an Order (Doc. 13) granting the Tandem Defendant's Motion to Dismiss with respect to the Count III claim for "aiding and abetting a breach of fiduciary duty," but denying the motion with respect to all other counts applicable to the Tandem Defendants (Counts IV, V, and VI).   The Tandem Defendants filed their Answer and Affirmative Defenses (Doc. 14) on December 7, 2007, and on June 13, 2008 the case was assigned to the "standard" case management track (Doc. 22).   On May 30, 2008, Plaintiff filed an Amended Complaint (Doc. 19) including the previously-dismissed "aiding and abetting a breach of fiduciary duty" claim from the original Complaint.   On June 30, 2008 the Court approved a Stipulation (Doc. 29) between the parties that Count III of the Amended Complaint was identical to Count III of Plaintiff's original Complaint, which had already been dismissed by the Court's November 27, 2007 Order.

Following the close of discovery, on November 24, 2008, the Tandem Defendants filed their Motion for Summary Judgment (Doc. 45) currently before the Court.   The Tandem Defendants also provided a Brief in Support (Doc. 48), along with a Statement of Facts (Doc. 45) as required by Middle District of Pennsylvania Local Rule 56.1.   On December 23, 2008, Colgate filed a Brief in Opposition (Doc. 78) and an Answer to Defendants' Statement of Facts (Doc. 79) and, on January 16, 2009, the Tandem Defendants filed their Reply Brief

5

(Doc. 91).  As the Tandem Defendants' Motion for Summary Judgment has been thoroughly briefed, it is currently ripe for disposition.

Similarly, on November 24, 2008, Plaintiff Colgate-Palmolive filed its Motion for Summary Judgment (Doc. 50) that is currently before the Court, along with a Brief in Support (Doc. 65) and a Statement of Facts (Doc. 66).   On December 23, 2008, the Tandem Defendants filed their Answer to Plaintiff's Statement of Facts (Doc. 72) and a Brief in Opposition (Doc. 84) to Plaintiff's motion.  Defendant Flower also filed an Affidavit (Doc. 83) and Brief in Opposition (Doc. 84) on December 23, 2008, and filed an additional set of Exhibits (Doc. 30) on December 30, 2008. Plaintiff filed its Reply Brief on January 16, 2009. Thus, Plaintiff's Motion for Summary Judgement has been thoroughly briefed and is now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.  An issue of material fact is genuine if "a reasonable jury could return

a verdict for the nonmoving party." *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I.   Tandem Defendants' Motion for Summary Judgment

#### A.   Statute of Limitations

The Tandem Defendants argue that Plaintiff's claims for unjust enrichment, conversion, and conspiracy were not brought within the applicable limitations periods for each cause of action.  (Defs.' Motion for Summary Judgment, Doc. 45, ¶¶ 31-42.)

##### 1.   Unjust Enrichment

"Under Pennsylvania law, an unjust enrichment claim has a four-year statute of limitations, which 'begins to accrue as of the date on which the relationship between the parties is terminated.'" *Colonial Assur. V. Marcantile & Gen. Reinsurance Co.*, 130 F. Appx. 607, 608 (3d Cir. 2005) (quoting *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997)).

The Tandem Defendants argue that "Colgate knew or on the exercise of reasonable diligence should have discovered its own issuance of checks to the Tandem Defendants in June 1996 and continuing thereafter for ten years." (Defs.' Br. in Supp., at 9.)[1] The Tandem

---

[1] Plaintiff Colgate-Palmolive requests that the Court strike the Tandem Defendants' Brief in Support for failure to comply with Middle District of Pennsylvania Local Rules of Court.  Local Rule 5.1(c) instructs parties to file briefs that are double-spaced and in 14-point or larger font.  Tandem's brief is not double spaced and appears to be in 12-point font.  Furthermore, under Local Rule 7.8, parties may not file briefs exceeding fifteen (15) pages or five thousand (5,000) words without prior Court authorization.  Tandem requested, and the Court granted, leave to file a twenty-six (26) page brief. However, Tandem's brief is twenty-three (23) pages in length, and the Court observes that, due to the formatting issues, it is effectively a much longer brief that would far exceed the twenty-six page limit if appropriately formatted.  The Court believes that such disregard for well-known and established Local Rules of Court constitutes risky and careless practice.  The Court also observes, however, that after Plaintiff noted these discrepancies, the Tandem Defendants appropriately conformed their subsequent pleadings to the Local Rules.  Based on Tandem's effort to conform once their error was brought to their attention, and since Colgate was able to properly respond to Tandem's non-conforming brief within the established page limitations,  the Court will not strike Tandem's Brief in Support as requested by Plaintiff.

Defendants support this argument by pointing out that Colgate wrote to Defendant Gyp's Market in September of 2000 in reference to its accounts, had payment headers referencing Gyp's Market, and was in possession of the negotiated checks cashed by the Tandem Defendants. (*Id*. at 10.) In the alternative, the Tandem Defendants request partial summary judgment on Plaintiff's unjust enrichment claim with respect to any checks predating September 19, 2003, the date four years prior to Plaintiff's filing of its Complaint on September 19, 2007. (*Id.* at 10-11.) In its Brief in Opposition to the Tandem Defendants' motion, Colgate argues that the Tandem Defendants had a "deal" in place with Defendant Flower until August 2006, and therefore, Colgate's unjust enrichment claim was filed just slightly more than a year after the relationship between the parties was terminated, well within the four year limitations period.

Accordingly, the question currently before the Court is whether Colgate and the Tandem Defendants had a relationship, via Defendant Flower, that was terminated at the time of Flower's retirement in August 2006. The undisputed facts in the present case relate that from 1996 until August 2006 Colgate, either knowingly or unknowingly, sent checks that were cashed by the Tandem Defendants. The Court believes that these acts constituted a relationship that terminated when the Tandem Defendants received their final check from Colgate. The undisputed facts indicate that the Tandem Defendants stopped receiving checks at the time that Defendant Flower retired in August 2006. Accordingly, the Court finds that the statute of limitations on Plaintiff's unjust enrichment claim began to accrue on or about the date of Defendant Flower's retirement in August 2006. Since Plaintiff's Complaint was filed on September 19, 2007, the Court finds that Colgate's unjust enrichment claim was brought before the limitations period expired, and the Court will deny the Tandem

Defendants' motion in this regard.

### 2.    Conversion & Conspiracy

"The statute of limitations for conspiracy is the same as it is for the underlying action which forms the basis of the conspiracy."  *Shippensburg v. Kelley*, 4 Pa. D. & C.5th 208, 218 (Pa. Cm. Pl. 2006) (citing *Ammlung v. City of Chester*, 494 F.2d 811 (3rd Cir. 1974). Plaintiff's Amended Complaint alleges that the Tandem Defendants and Defendant Flower engaged in a conspiracy to defraud Colgate, to breach Flower's fiduciary duties owed to Colgate, and to engage in the torts of conversion and unjust enrichment.  (Am. Compl., Doc. 19 ¶¶ 24-32, 33, 35-36, 39-40, 76-80.)  Pennsylvania has a two-year statute of limitations for fraud, fiduciary breach, and conversion and a four-year statute of limitations for unjust enrichment.  42 Pa. C.S.A. §§ 5524(3) & (7), 5525(a)(4).  "Where there are repetitive acts committed as part of a continuing conspiracy, the statute of limitations does not begin to run until after the commission of the last overt act in furtherance of the conspiracy."  *Kelley*, 4 Pa. D. & C.5th at 218 (citing *Baker v. Rangos*, 229 Pa. Super. 333, 324 A.2d 498 (Pa. Super. 1974)).  Accordingly, in order for Colgate's fraud- and conversion-related conspiracy claims to be timely, these claims must have been filed within two years of Colgate's discovery of the alleged conspiracy, or the last act of the alleged conspiracy.

The Tandem Defendants argue in support of their motion that:

Colgate knew or on the exercise of reasonable diligence should have known of its claims: (1) from the time of the issuance and negotiation of the first check in 1996 and continuing with the issuance and negotiation of each check thereafter, (2) when Colgate wrote to Gyp's Market on September 22, 2000 regarding its accounts, (3) when the TAM system was instituted in November 2000, (4) on July 1, 2003 when the AmeriSource Bergen Account listed a payee as Gyp's Market, 1015 Dewey Street, Freeland, PA and/or (5) when approval and the account billing invoice was needed on all checks per the email of February 12, 2002 sent to Richard Flower.

10

(Defs.' Br. in Supp., at 11.)  In response, Colgate argues that the alleged conspiracy started when the Tandem Defendants reached a "deal" with Defendant Flower to receive free Colgate product and check payments.  (Pl.'s Br. in Opp., at 8.)  Colgate further argues that this conspiracy did not end until Flower retired and both payments and delivery of Colgate products to the Tandem Defendants stopped in August 2006.  (*Id.*, at 9.)

Colgate also argues that its claims are subject to tolling under the "discovery rule." "The discovery rule tolls the accrual of the statute of limitations when a plaintiff is unable, '*despite the exercise of due diligence,* to know of the injury or its cause.'"  *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (emphasis in original) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (Pa. 1983)).  "Under the rule, even if a plaintiff suffers an injury, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'"  *Id.* (quoting *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003)).  "For the statute of limitations to run, a plaintiff need not know the 'exact nature' of his injury, as long as it objectively appears that the plaintiff 'is reasonably charged with the knowledge that he has an injury caused by another.'"  *Id.*, at 510-511 (quoting *Ackler v. Raymark Indus., Inc.*, 380 Pa. Super. 183, 551 A.2d 291, 293 (Pa. Super. 1988)).

Colgate argues that the discovery rule should apply in the current case because there is no evidence that anyone at Colgate actually knew or should have reasonably known about the Tandem Defendants' agreement with Defendant Flower to receive free Colgate product and payments. (Pl.'s Br. in Opp., at 10-11.)   Colgate further disputes the Tandem

11

Defendants' characterization that Colgate had records of payments being made to Gyp's Market.  (*Id.*, at 11.)  According to Colgate, these records consisted of only a few Microsoft Excel spreadsheet files that nobody at Colgate had any reason to review.  (*Id.*)  Moreover, Colgate also represents that these files contained hundreds of thousands of records, and locating indications of payments from Colgate to the Tandem Defendants requires a person reviewing these files to click on individual cells in these spreadsheets.  (*Id.*)  Colgate further argues that, even if it had known that payments were being made to the Tandem Defendants, Colgate had no way of recognizing that it was being harmed because part of Defendant Flower's job responsibilities were to make incentive payments to retailers.  (*Id.*)  According to Colgate, "nothing in the TAM records (or any other records regarding the Tandem Defendants) revealed anything out of the ordinary,"  and that the TAM records actually "indicated (falsely) that the Tandem Defendants had purchased specific Colgate products from a specific Colgate direct account and were therefore entitled to performance monies under Colgate policy." (*Id.*, at 13) In summary, Colgate states that "[n]othing about the Tandem Defendants stood out, and there was no reason for anyone at Colgate to even suspect that it was being injured."  (*Id.*)

Colgate also argues that its claims are timely because they are subject to tolling under the inherent fraud and fraudulent concealment doctrines.  "Pennsylvania's inherent fraud doctrine. . . focuses on whether the underlying events are based on fraud or deceit. If they are, 'then that, without more, will toll the statute of limitations until such time as the fraud has been revealed or should have been revealed by the exercise of due diligence by plaintiffs.'" *Beauty Time v. VU Skin Sys.*, 118 F.3d 140, 146 (3d Cir. 1997) (quoting *Sheet Metal*

12

*Workers Int'l Assn., Local 19 v. 2300 Group, Inc.*, 949 F.2d 1274, 1280 (3d Cir. 1991)).

Similarly, "Pennsylvania's fraudulent concealment doctrine tolls the statute of limitations

where 'through fraud or concealment the defendant causes the plaintiff to relax vigilance or

deviate from the right of inquiry.'" *Mest*, 449 F.3d at 516 (quoting *Ciccarelli v. Carey

Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)).

 In order to prove inherent fraud, Colgate "must first establish that the [Defendants]

made a representation in regard to a material fact." *Sheet Metal Workers*, 949 F.2d at 1280

(citations omitted). Colgate must, then, "demonstrate that the representation was false. . .,

show that the representation was not actually believed by the [Defendants], on reasonable

grounds, to be true." *Id.* Colgate must also show that it "acted on the misrepresentation to

[its] damage. . ., [and] must show [it] was not only ignorant of the falsity of the representation,

but also believed it to be true." *Id.* As already detailed, Colgate argues that it was unaware

of the dealings between the Tandem Defendants and Defendant Flower, and specifically

argues that it's lack of discovery was the result of Flower's fraudulent entries in the TAM

system "to make it appear that the payments to the Tandem Defendants were legitimate"

and that Flower "made it appear as if the Tandem Defendants had actually purchases

specific product from the Colgate direct accounts." (Pl.'s Br. in Opp., at 17.) Colgate further

argues that Flower undertook his efforts to conceal his dealings as part of a conspiracy with

the Tandem Defendants. (*Id.*)

 In reply to Colgate's tolling arguments, the Tandem Defendants reiterate their original

argument that there were reasons for awakened inquiry during the ten (10) year period in

which the Tandem Defendants were dealing with Defendant Flower. (Defs.' Br. in Reply, at

9.)   The Tandem Defendants further argue that they made no effort to conceal their relationship, as they promptly cashed the provided checks and continued to take the Colgate product pursuant to their agreement with a Colgate employee. (*Id.* at 10.)   The Tandem Defendants also expressly refute Colgate's arguments that nothing stood out about the payments Flower made to the Tandem Defendants, noting that the deposition testimony and account records indicate that, unlike other payments Colgate made to retailers, the payments to the Tandem Defendants were "nice round numbers." (*Id*. at 13.)   Moreover, the Tandem Defendants argue that they were not responsible for Defendant Flower's fraudulent entries into the TAM system.  (*Id.* at 17.)   Rather, they state that "Tandem simply agreed to take all of Colgates' unwanted merchandise and either sell or dispose of it for which money may be available to Tandem."  (*Id.*)

Based on these competing arguments and the associated facts revealed through discovery, the Court finds that Colgate has produced sufficient evidence to withstand the Tandem Defendants' contention that they are entitled to dismissal of this case as a matter of law.  There is a genuine factual dispute as to whether Colgate knew or should have known of the alleged conversion and conspiracy prior to September 19, 2005, two years before Colgate actually filed suit in this case.  It is for a jury to determine whether Colgate acted in a reasonably diligent manner to discover the deliveries of Colgate product and funds Defendant Flower was making to the Tandem Defendants.  For this reason, the Tandem Defendants' motion will be denied in this regard.

**B.     Merits of Colgate's Claims[2]**

The Tandem Defendants also argue that Colgate has "failed to plead and prove the allegations for the causes of action of Unjust Enrichment, Conversion and Civil Conspiracy against the Tandem Defendants."  (Defs.' Br. in Supp., at 23.)

1.     Unjust Enrichment

The elements of unjust enrichment under Pennsylvania law have been defined as:

(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

*Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (quoting *Limbach Co. LLC v. City of Philadelphia*, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006). Similarly stated, "[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." *Id.* (quoting *Torchia v. Torchia*, 346 Pa. Super. 229, 499 A.2d 581, 582 (Pa. Super. 1985)).  However, "[u]njust enrichment is not applicable where the relationship among the parties is based on an express agreement." Birchwood Lakes Community Ass'n. v. Comis, 296 Pa. Super. 77, 87 (1982).

In the current case, the Tandem Defendants argue that Colgate's unjust enrichment claim is not applicable because Colgate and the Tandem Defendants had an express agreement to do business, executed through Defendant Flower as a Colgate employee.

---

2

Along with each of their ostensibly merits-related arguments concerning Colgate's Count IV, V, and VI claims, the Tandem Defendants restate the already-discussed arguments concerning the various statutes of limitations for each of these claims.  The Court believes it is unnecessary to readdress those arguments in this section.

(*See* Defs.' Br. in Supp., at 12.)  According to Tandem, "Colgate has been unable to prove that the benefits retained by the Tandem Defendants in the form of the checks render such circumstances that it would be inequitable for the Tandem Defendants to retain the benefit without payment of value since the Tandem Defendants believed they had an agreement with Colgate. . . and [they] did not breach the agreement."  (*Id.*, at 12-13.)  In support of this argument, the Tandem Defendants cite to specific nuances of the deal initiated and executed by Defendant Flower.  (*Id.*)  In particular, Tandem notes that the terms of their agreement with Flower required them to accept all deliveries of Colgate product, no matter what condition, and that, on occasion, the received product was in sufficiently poor condition that the Tandem Defendants were required to dispose of the entire shipment.  Tandem further argues that Colgate received the benefit from Tandem's salvage and disposal service since this service allowed Colgate to sell more product to the warehouses and businesses who later provided the products to Defendant Flower who, in turn, gave them to Tandem. (*Id.*, at 13.)

In its Brief in Opposition to the Tandem Defendants' motion, Colgate argues that the "deal" between the Tandem Defendants and Flower was not an enforceable agreement. (Pl.'s Br. in Opp., at 18-19.)  In particular, Colgate argues that Flower and Tandem had no agreement that the checks Tandem received from Colgate would be for a certain amount of money.   Further, Colgate argues that these checks were never associated with the shipments of Colgate product received by the Tandem Defendants.  Instead, Colgate states that "Flower arranged for trucks to deliver whatever product Flower felt like providing," and "sometimes the product would just show up in the middle of the night, or be dropped off by Flower from the back seat of his car."  (*Id.*, at 19.)  Colgate supports this argument by citing

to Defendant Lawson's deposition testimony stating that he had no way of knowing what the amount of the checks from Colgate would be and that Defendant Flower never said "this is what you're going to get."  (Lawson Dep. Tr., Doc. 83, Ex. 4, at 129:12-23.) Rather, Lawson indicated that Defendant Flower simply stated "there might be some money in it for you." (*Id*.)  Colgate also notes that the "deal" between Flower and Tandem did not "generate any paperwork" and that the checks Tandem received bore no relationship to the Colgate product it took in. (*Id.*, at 113:16-114:24.)   Colgate further notes that when asked why Tandem received a particular payments from Colgate, Lawson stated that he had "no idea" why Tandem received the payments, had no documentation explaining the payments, and had not been told that the payments correlated with anything.  (*Id.*, at 242:4-243:19.) Defendant Mulhearn also stated in his deposition that he never saw any paperwork detailing the deal Tandem had with Flower. (Mulhearn Dep. Tr., Doc. 83, Ex. 3, at 135:9-136:9.)

The Court finds, based on the presented evidence, that there is no question that the Tandem Defendants, at a minimum, passively received a benefit from Colgate via their relationship with Defendant Flower.  The Court, does however, find that the contrasting characterizations of the terms of the agreement between Flower and the Tandem Defendants raises questions of material fact as to whether it would be unconscionable for the Tandem Defendants to retain this benefit.  *See  Torchia*, 499 A.2d , at 582.  For this reason, the Court will deny the Tandem Defendants' Motion for Summary judgement on the merits of Plaintiff's Count IV unjust enrichment claim.

2.    Conversion

"Conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's

17

consent and without lawful justification." *Pittsburgh Construction Co. V. Griffith*, 2003 PA Super 374, 834 A.2d 572, 581 (Pa. Super. 2003).

In support of their Motion for Summary Judgment, the Tandem Defendants reprise their argument that they had an agreement with a Colgate employee regarding their acceptance of any Colgate product in any form, along with an agreement to receive money. (Defs.' Br. in Supp., at 16.)  They state that the "parties' course of conduct and dealings show there was an agreement between them and the parties acted in accordance with the agreement."  (Defs.' Br. in Reply, at 18.)  Simply put, the Tandem Defendants argue that they had Colgate's consent to receive product and checks and, thus, no conversion occurred.  (*Id.*)

The Tandem Defendants also offer an alternative argument that, in the instant case, Colgate and Gyp's Market are both merchants and should, therefore, be held to a higher standard in their dealings with each other.  On the basis of this argument, and without citing any supporting law, the Tandem Defendants state that "liability in the instant case rests with the party best able to prevent the loss."  (*Id.*, at 17.)  According to Tandem, all of the checks at issue here were checks issued by Colgate at the request of its employees, and thus, Colgate was best able to prevent the loss by training and supervising their employees regarding the issuance of checks and provision of Colgate product.  (*Id.*)  Tandem further argues that Colgate was careless in its business practices, failed to take cost-justified precautions, failed to institute proper internal controls, and ignored obvious risks inherent in the TAM system.  (*Id.*)

Upon its review of the evidence, however, the Court believes that significant questions of material fact remain concerning whether the Tandem Defendants' acceptance of Colgate

product and money occurred with Colgate's consent.  As mentioned in this Memorandum's prior discussion of Colgate's unjust enrichment claim, Defendants Lawson and Mulhearn both stated in their depositions that they never received any paperwork from either Defendant Flower or from Colgate detailing the terms of the alleged relationship between the Tandem Defendants and Colgate.  (Lawson Dep. Tr., at 242:4-243:19; Mulhearn Dep. Tr., at 135:9-136:9.)  Moreover, Defendant Lawson indicated that he had "no idea" why Colgate was providing Tandem with payments and that the Tandem Defendants' dealings with Flower were distinctly different than the dealings they had with their prior contact at Colgate.  (Lawson Dep. Tr., at 128:3-129:11, 210:20-211:8, 242:4-243:19.)  The Court observes that the evidence indicates that Defendant Flower did not discuss the Tandem Defendants with anyone at Colgate during the time he was sending them free product and causing them to be sent checks.  (Flower Resp. to Interrogatories., Doc. 80, Ex. 11, at No. 4; Flower Dep. Tr., Doc. 83, Ex. 2, at 155:18-156:13.)  However, the Court, also notes that Flower directly contradicted this testimony in an affidavit filed at the end of the discovery period in this case, stating that his supervisors at Colgate knew about and encouraged his relationship with Tandem.  (Sept 20, 2008 Flower Affidavit, Doc. 80, Ex. 10.)  A reasonable jury, when presented with this evidence, could determine that Colgate either did or did not know and consent to the deliveries of product and money to the Tandem Defendants.  For this reason, summary judgment is not appropriate on Plaintiff's Count V claim for conversion, and the Court will deny the Tandem Defendants' motion in this regard.

    3.    Conspiracy

Under Pennsylvania law, the elements of a civil conspiracy claim are: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or

to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa.Super. 1998) (quoting *Kadel v. McMonigle*, 425 Pa. Super. 253, 624 A.2d 1059, 1063 (Pa. Super. 1993)).

The Tandem Defendants argue that summary judgment is appropriate with regard to Colgate's Count V conspiracy claim because "[n]othing in the responsive pleadings and nothing in any of the depositions taken has proved that the Tandem Defendants and Colgate [sic[3]] agreed, combined and acted with a common plan and purpose to defraud Colgate of any of its monies by engaging in any unlawful acts." (Defs.' Br. in Supp., at 21.)   The Tandem Defendants also argue that, since Plaintiff's Count III aiding and abetting a breach of fiduciary duty claim has already been dismissed by this Court, there are no remaining factual allegations to support Plaintiff's conspiracy claim.  (*Id.*, at 20.)

In response, Colgate first argues that the Tandem Defendants can be liable for conspiracy even without actually engaging in any over acts a long as their co-conspirator, Flower, did engage in such acts.  (Pl.'s Br. in Opp., at 23.)  Colgate supports this argument by citing to the Third Circuit Court of Appeals' decision in *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, which states that "Not every conspirator must commit an overt act in furtherance of the conspiracy, so long as at least one does."  331 F.3d 406, 415 (3d Cir. 2003) (citing *Beck v. Prupis*, 529 U.S. 494, 503 (2000)).  Colgate argues that, at a

---

3

The Court believes, for obvious reasons, that it is unlikely that any of the evidence would show that Colgate conspired with the Tandem Defendants to defraud itself.  Since the Tandem Defendants' argument, as stated, sets forth a nonsensical position not in character with the balance of their pleadings in this case, the Court will assume that the Tandem Defendants intended to state that "[n]othing in the responsive pleadings and nothing in any of the depositions taken has proved that the Tandem Defendants and *Richard Flower* agreed, combined and acted with a common plan and purpose to defraud Colgate of any of its monies by engaging in any unlawful acts."

minimum, Defendant Flower entered false records into the TAM system in order to generate the checks that were sent to the Tandem Defendants and that the Tandem Defendants are jointly and severally liable for this conduct.

Colgate further argues that the Tandem Defendants themselves engaged in numerous acts in furtherance of their alleged conspiracy with Flower.  In particular, Colgate points to the fact that the Tandem Defendants deposited the checks they received, and raises the question of whether the Tandem Defendants knew they were not legitimately entitled to these payments.  This argument is supported by citation to the Third Circuit Court of Appeals' decision in *U.S. v. Alper*, in which the Circuit Court held that depositing checks could constitute an overt act in furtherance of conspiracy.  449 F.2d 1123, 1227 (3d Cir. 1971).  Colgate also argues that the Tandem Defendants received free Colgate product, to which they had no legitimate entitlement, that they sold in their store for pure profit. Moreover, Colgate notes that the Tandem Defendants purchased product directly from Flower and paid him directly by cash or check.

Finally, Colgate argues that there is a genuine issue of fact about whether the Tandem Defendants knew the these payments and Flower's provision of free Colgate product were not legitimate.  In furtherance of this argument, Colgate notes that, in the Tandem Defendants prior dealings with Colgate, there was required paperwork, Tandem did not receive free product, and any payments Tandem received were associated with specific purchases of Colgate product.  Colgate also notes that the evidence shows that, even though the payments provided by Flower often made the difference between an annual profit and loss for the Tandem Defendants' store, they did not bother to contact Colgate in effort to continue this deal with Flower's replacement following his retirement.  Colgate further

21

points out that the Tandem Defendants admit that they did not receive free product and payment from any other manufacturer.   As a result of all this, Colgate summarizes its argument, stating that "it defies credibility for the Tandem Defendants to now claim that they thought their relationship with Flower was legitimate."  (Pl.'s Br. in Opp., at 25.)

Based on its review of the presented evidence, the Court finds that questions of material fact remain as to whether the Tandem Defendants and Defendant Flower engaged in a conspiracy to defraud Colgate.  As already noted, the Defendants Lawson and Mulhearn stated in their depositions that they had never received a deal from any other manufacturer that was as good as the deal Flower was providing Tandem.  (Lawson Dep. Tr., at 131:7-132:14; Mulhearn Dep. Tr., at 139:14-140:15.)   Defendant Lawson also stated that the Tandem Defendants did not expect to receive checks from Colgate when they purchased Colgate product from other Colgate sources.  (Lawson Dep. Tr., at 175:9-17.)  The Court also notes, however, that the Tandem Defendants also stated in their depositions that they performed a salvage service for Colgate where they agreed to receive, sort, and, when possible, sell unwanted or returned Colgate product.  (Mulhearn Dep. Tr., at 119:5-129:6; Lawson Dep. Tr., at 80:10-82:21, 96:1-24.)  The Court finds that this evidence, along with an absence of any evidence showing that the Tandem Defendants were aware that Flower was falsifying internal records in order to provide their payments, raises questions about whether the Tandem Defendants could have reasonably believed that they were receiving both free product and money in legitimate exchange for their commitment to salvage and dispose of product that had been returned to Colgate.  Accordingly, the Court believes that questions of fact remain as to whether the Tandem Defendants shared a common purpose with Defendant Flower to do an unlawful act or to do a lawful act by unlawful means or for

an unlawful purpose, and will deny the Tandem Defendants' Motion for Summary Judgement with respect to Colgate's conspiracy claims.

## II.   Colgate-Palmolive's Motion for Summary Judgment

In its Motion for Summary Judgment and supporting brief, Plaintiff Colgate-Palmolive argues that it is entitled to summary judgment on (1) its breach of fiduciary duty claim against Defendant Flower, (2) its unjust enrichment claim against the Tandem Defendants, and (3) its conversion claim against the Tandem Defendants. As already discussed in detail in its analyzing the Tandem Defendants' motion, the Court finds that questions of fact remain with respect to Colgate's claims for unjust enrichment and conversion, and will deny Colgate's motion with respect to these claims. Accordingly, the Court now turns it's attention to the Plaintiff's Motion for Summary Judgment as it pertains to Colgate's claim against Defendant Flower for breach of fiduciary duty.

### A.   Breach of Fiduciary Duty

"There can be no doubt that an employee owes a duty of loyalty to his employer and in all matters, affecting the subject of his employment, he must act with the utmost good faith in the furtherance and advancement of the interests of his employer." Katz v. Food Sciences Corp., No. 99-CV-622, 2000 U.S. Dist. LEXIS 10285, at *16 (E.D. Pa. July 13, 2000) (quoting *Sylvester v. Beck*, 406 Pa. 607, 178 A.2d 755, 757 (Pa. 1962)) (citing Restatement (Second) of Agency §§ 387, 391 (1958)). "[T]he elements a plaintiff must prove for a claim of breach of fiduciary duty are (1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's

benefit was a real factor in bringing about plaintiff's injuries." *First American Marketing Corp. v. Canella*, No. 03-CV-812, 2004 U.S. Dist. LEXIS 2251, at *26 (E.D. Pa. Jan. 26, 2004) (paraphrasing *McDermott v. Party City Corp.*, 11 F. Supp. 2d. 612, 626 n.18 (E.D. Pa. 1998)).

    1.    Defendant Flower's Sale of Colgate Product to Tandem Defendants

First, Colgate argues that Flower breached his fiduciary duty by selling twenty-five thousand dollars ($25,000.00) in Colgate product to the Tandem Defendants while keeping the proceeds for himself.  In particular, Colgate notes that Flower testified in his deposition that he personally sold product to Defendant Gyp's Market, even though Gyp's Market was planning to buy directly from Colgate. (Flower Dep. Tr., at 150:17-151:9.) Moreover, Flower testified that he specifically requested that the Tandem Defendants write checks directly to him and not to Colgate.  (*Id.*, at 160:11-23.)  Defendant Lawson also indicated in his deposition that, on occasion, Defendant Flower requested, and the Tandem Defendants agreed, that he receive cash payment in exchange for the product. (Lawson Dep. Tr., at 146:17-147:5.)  Finally, Flower stated in his deposition testimony that he never sought approval or, in any way, discussed these sales with anyone else at Colgate. (Flower Dep. Tr., at 155:18-156:5.)

In response, Defendant Flower does not contest that he sold Colgate product to the Tandem Defendants, but does argue that the product he provided to Tandem was his property, not Colgate property.  In particular, Flower claims (1) that Colgate would not take back certain Colgate product returned from merchants, (2) that he inquired with his supervisors at Colgate what he should do with the product, and (3) he was told that he could do "whatever he pleased" with this product.  (Flower Br. in Opp., Doc. 84, at 8-9.)  Flower

states that "[t]he best that Colgate counsel can produce as proof of a breach of fiduciary duty is toothbrush transactions with a Dollar Store which marketed outdated or abandoned property <u>once</u> owned by Colgate. (Flower Br. in Opp., at 9-10.) Thus, Flower argues that "a question of fact and law exists with respect to intent as to whether Flower negligently or intentionally failed to act in good faith when the product he is accused of 'selling' is discarded, damaged, left-over trade show product which only a company like Defendant Gyp's had any interest to receive." (*Id.*, at 9.)

Based on its review of the evidence, the Court finds that no questions of material fact remain concerning whether Defendant Flower breached his fiduciary duties to Colgate by usurping a business opportunity for his own personal gain. Defendant Flower, himself, stated that he sold Defendant Gyp's Market Colgate product, while keeping the proceeds of these sales, even though he was aware that Gyp's was considering purchasing product directly from Colgate. (Flower Dep. Tr., at 150:17-151:9.) Accordingly, Defendant Flower's argument that he, not Colgate, owned the trade show samples that he sold to the Tandem Defendants is irrelevant. The undisputed facts clearly show that Flower, in the course of his employment with Colgate undertook actions that made him a direct competitor with his employer. The Court, accordingly, believes that (1) Defendant Flower failed to act in good faith for the benefit of Colgate, (2) Colgate suffered an injury of approximately twenty-five thousand ($25,000) in lost sales, and (3) that Flower's failure to act solely for Colgate's benefit was the primary factor in bringing about this loss in sales. For this reason, the Court will grant Plaintiff Colgate-Palmolive's Motion for Summary Judgment on its Count II breach of fiduciary duty claim against Defendant Flower with respect to his personal sale of trade show and other Colgate Product to the Tandem Defendants.

25

2.      Defendant Flower's Provision of "Performance Monies"

Colgate's second argument in support of its Motion for Summary Judgment on its Count II breach of fiduciary duty claim against Defendant Flower states that Flower's payment of over six hundred seventy thousand dollars ($670,000) in "performance monies" to the Tandem Defendants served no legitimate business interest and constitutes a breach of the fiduciary duties Flower owed to Colgate.

As Colgate notes, the undisputed evidence presented in this case shows that Defendant Flower used Colgate's TAM system to make regular payments of to the Tandem Defendants on the AmerisourceBergen and Weis Markets accounts, which were specific accounts designed to reward retail stores purchasing Colgate product from these particular distributors.  (Flower Dep. Tr., 196:17-204:8.)  It is further undisputed that the Tandem Defendants did not make any purchases of Colgate product from either AmerisouceBergen or Weis Markets.  (*Id.*, at 173:2-14; Tandem Defs.' Resp. To Pl.'s First Set of Interrogatories, Doc. 80, Ex. 5, at No. 5.)  Defendant Flower also testified that, if the Tandem Defendants had not made any purchases from these accounts, then he was not authorized by Colgate to make performance money payments to Tandem from these accounts.  (Flower Dep. Tr., at 259:15-261:8.)  Defendant Flower has also stated in an affidavit that he diverted Colgate product to the Tandem Defendants, (Sept 20, 2008 Flower Affidavit ¶ 6.), and stated in his deposition that retailers receiving diverted Colgate product were not eligible for performance money payments, (Flower Dep. Tr., at 210:4-19, 215:10-16).

In response, Defendant Flower argues that, during his employment with Colgate, he was given the authority to electronically transfer money through the TAM system to a store such as Gyp's Market.  (Flower Br. in Opp., at 10.)  In his discussion of the workings of the

Colgate TAM system, Flower notes that he issued performance money to a store in Hawaii without ever traveling to Hawaii to witness or personally observe whether it was selling Colgate products.  (*Id.*)  He also notes that in the six (6) years between the institution of the TAM system and Flower's 2006 retirement, Colgate never once requested information regarding his use of the TAM system or his interaction with the Tandem Defendants.  (*Id.*)  Flower also argues that Colgate never requested or required someone in Flower's position to maintain documents of the nature necessary to defend against the allegations made in the current case, and states that Colgate never presented Flower with a job description containing a duty to act in accordance with the fiduciary duties he is now accused of having breached.  (*Id.*, at 11.)  Flower further states that, in his position as Account Business Manager, he had broad discretion for "seemingly endless" types of expenditures via the TAM system, and that Colgate has failed to provide a single document bearing Flower's signature in which he acknowledged that his discretion was restricted to making reward payments to stores actually purchasing Colgate product.  (*Id.*)  In short, Flower argues that there is no proof that he intentionally violated any standard, policy or duty because there is no job description delineating the standards, policies, or duties Flower was bound to observe.  (*Id.* at 12.)  According to Flower, "[t]he deposition testimony simply reflects that there <u>may be</u> a mistake on the part of Flower which compels the opportunity for a Jury [sic] to determine state of mind. . .."  (*Id.*)(emphasis original)

In its review of the evidence, the Court finds that no questions of material fact remain concerning whether Defendant Flower breached his fiduciary duties to Colgate by authorizing  six hundred seventy-four thousand, seventy dollars and fifty-five cents ($674,070.55) in

performance money payments to the Tandem Defendants.  In his deposition, Defendant Flower testified at great length concerning the purpose of performance money payments and the reasons why such payments were associated with particular accounts.  (Flower Dep. Tr., at 192:17-204:10.)  Furthermore, Flower acknowledged that he both diverted product to the Tandem Defendants and was aware that retailers receiving diverted Colgate product were not eligible for performance money payments. (Sept 20, 2008 Flower Affidavit ¶ 6; Flower Dep. Tr., at 210:4-19, 215:10-16.)  Finally, there is no question that the Tandem Defendants did purchase Colgate product from the distributors linked to the accounts through which Flower provided Tandem with performance money payments.  (Flower Dep. Tr., at 173:2-14; Tandem Defs.' Resp. To Pl.'s Interrogatories, No. 5.)  The Court also notes a distinct lack of any evidence suggesting that the performance money payments provided any benefit, or could be reasonably expected to provide any benefit, to Colgate.  Rather, the evidence clearly states that there was no identifiable reason for Flower to provide the Tandem Defendants with these regular payments.  (*See* Lawson Dep. Tr., at 242:4-243:19.) Accordingly, the Court finds that there is no question of fact that (1) Defendant Flower, either through his negligence or intent, failed to act in good faith for the benefit of Colgate, (2) Colgate suffered an injury of approximately six hundred seventy-four thousand dollars ($674,000) in performance money payments that were provided to unqualified recipients, and (3) that Flower's failure to act solely for Colgate's benefit was the primary factor in bringing about this loss.  For this reason, the Court will grant Colgate's Motion for Summary Judgment on its Count II breach of fiduciary duty claim against Defendant Flower with respect to his provision of payments made to the Tandem Defendants.

**CONCLUSION**

For the reasons discussed above, the Court will deny the Tandem Defendants Motion for Summary Judgement (Doc. 45).  The Court will also deny Plaintiff Colgate-Palmolive's Motion for Summary Judgment (Doc. 50) with respect to Colgate's unjust enrichment and conversion claims against the Tandem Defendants, and will grant Colgate's motion with respect to its Count II breach of fiduciary duty claims against Defendant Flower.

An appropriate Order follows.


 April 9, 2009                                                    /s/ A. Richard Caputo
Date                                                               A. Richard Caputo
                                                                   United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

COLGATE-PALMOLIVE COMPANY

     Plaintiff,

        v.

TANDEM INDUSTRIES, GYP'S
MARKET, JAMES LAWSON, THOMAS
MULHEARN, and RICHARD FLOWER,

     Defendants.

CIVIL ACTION NO. 3:07-CV-1709

(JUDGE CAPUTO)

## ORDER

**NOW**, this 9th day of April, 2009, **IT IS HEREBY ORDERED** that:

(1)    Defendants Tandem Industries, Gyp's Market, James Lawson, and Thomas Mulhearn's Motion for Summary Judgment (Doc. 45) is **DENIED**;

(2)    Plaintiff Colgate-Palmolive's Motion for Summary Judgment (Doc 50) is **GRANTED** in part and **DENIED** in part as follows,

    (i)    Plaintiff's motion is **DENIED** with respect to Plaintiff's Count IV and V claims for unjust enrichment and conversion against Defendants Tandem Industries, Gyp's Market, James Lawson, and Thomas Mulhearn,

    (ii)    Plaintiff's motion is **GRANTED** with respect to Plaintiff's Count II claims for breach of fiduciary duty against Defendant Richard Flower;

(3)    **JUDGMENT IS ENTERED** against Defendant Richard Flower and in favor of Plaintiff Colgate-Palmolive for twenty-five thousand dollars ($25,000.00); and

(4)     **JUDGMENT IS ENTERED** against Defendant Richard Flower and in favor of Plaintiff

Colgate-Palmolive for six hundred seventy-four thousand, seventy dollars and fifty-five

cents ($674,070.55).


                                                 /s/ A. Richard Caputo
                                                A. Richard Caputo
                                                United States District Judge